**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **APELDYN CORPORATION,** | Case No. 3:12-cv-00722-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **EIDOS, LLC,** | |
| Defendant. | |

Don H. Marmaduke, Jon P. Stride, and Anna K. Sortun, Tonkon Torp LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Portland, OR 97204. Attorneys for Plaintiff.

Frank V. Langfitt, Ater Wynne LLP, 1331 N.W. Lovejoy Street, Suite 900, Portland, OR 97209. Attorneys for Defendant.

**SIMON, District Judge**.

Plaintiff Apeldyn Corporation has sued Defendant Eidos, LLC, seeking declaratory and injunctive relief relating to the enforceability of the 2008 Patent Agreement ("Patent Agreement") entered into between the parties and alleging breach of contract relating to a separate agreement between the parties. Dkt. 3. Eidos counterclaimed for breach of the Patent

Agreement and for fraud; Eidos also seeks declaratory and injunctive relief and the appointment of a receiver. Dkt. 12. Apeldyn has moved for partial summary judgment, seeking a declaration that: (1) the Patent Agreement expired on April 23, 2012, and for all purposes relevant to this action has no force or effect after that date; and (2) the expiration of the Patent Agreement extinguished all claims of Eidos against Apeldyn based on any potential settlements or judgments that were not in effect as of April 23, 2012. Dkt. 62. Eidos has cross-moved for partial summary judgment, seeking dismissal of Apeldyn's claim for declaratory relief. Dkt. 86.

For the reasons discussed below, Apeldyn's motion is granted in part and denied in part, and Eidos's motion is denied. The Court finds that: (1) Paragraph 11.1 (the "Expiration Clause") of the Patent Agreement is unambiguous and the Patent Agreement expired as of April 23, 2012; and (2) Paragraph 11.5 (the "Preservation Clause") of the Patent Agreement is ambiguous as to whether Eidos has any "accrued rights" under the Patent Agreement that survive the expiration of the Patent Agreement.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the

plaintiff's position [is] insufficient. . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

## BACKGROUND

Apeldyn is the owner of U.S. Patent No. 5,347,382 ("the Patent"). Apeldyn and Eidos are parties to the Patent Agreement, under which, among other things, Eidos agreed to assist Apeldyn in its enforcement efforts against potential infringers of the Patent and in licensing the Patent's technology, and Apeldyn agreed to compensate Eidos for its efforts and expenditures through a share of any enforcement or licensing revenues generated under the Patent Agreement. Pat. Agm. ¶¶ 1.5, 3.1, 6.2, 6.3. Under the Patent Agreement, Eidos further agreed to pay all licensing and litigation costs and fees, with reimbursement being owed to Eidos from Apeldyn only through licensing or litigation revenues generated under the Patent Agreement. Pat. Agm. ¶¶ 1.5, 3.3, 4.1, 6.4, 6.5.

The law firm of McKenna Long & Aldridge LLP ("MLA") negotiated the Patent Agreement on behalf of Eidos and drafted the Patent Agreement. After the Patent Agreement was signed, MLA entered into the joint representation of both Eidos and Apeldyn in enforcing the Patent. The parties designated MLA as "Licensing Counsel" under the Patent Agreement, and MLA commenced enforcement actions against the alleged primary infringers of the Patent.

The disputed provisions of the Patent Agreement are the Expiration Clause and the Preservation Clause. The Expiration Clause provides:

> Unless earlier terminated as provided in Sections 11.2 or 11.6, or as a result of arbitration under Part 12 of this Agreement, *this Agreement will remain in full force and effect until the last claim of the Apeldyn Patent expires or is invalidated*.

Pat. Agm. ¶ 11.1 (emphasis added). It is the last part of the Expiration Clause that is in dispute in this action. The Preservation Clause states:

> The following Sections of this Agreement will survive termination or expiration according to their terms: Sections 8 (Confidentiality), 12 (Arbitration or Disputes), 18 (Notice), 20 (Choice of Law) and 21 (Miscellaneous). *Termination or expiration of this Agreement will not extinguish a claim or right that has accrued prior to termination or expiration.*

Pat. Agm. ¶ 11.5 (emphasis added). It is the final sentence of the Preservation Clause that is in dispute in this action. The parties further agreed that Oregon law shall govern the Patent Agreement. Pat. Agm. ¶ 20.

## DISCUSSION

### A.  Contract Interpretation Under Oregon Law

Under Oregon law, the objective in contract interpretation is to give effect to the parties' agreed-upon intentions. *See, e.g.*, *Connall v. Felton*, 201 P.3d 219, 224 (Or. Ct. App. 2009) ("The goal [of contract interpretation] is always to give effect to the parties' intentions."). Oregon courts have established a three-step process for interpreting the provisions of a contract. First, the court determines whether, as a matter of law, the relevant provision is ambiguous. *McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 157 P.3d 291, 294 (Or. Ct. App. 2007). In considering whether a contractual provision is ambiguous, a court is limited to considering only the plain meaning of the words used by the parties in their contract and any extrinsic evidence showing the circumstances under which the contract was made. *See Batzer Constr., Inc. v. Boyer*, 129 P.3d 773, 777 (Or. Ct. App. 2006); *Fogg v. Wart*, No. CV-06-160-ST, 2006 WL 3716745, at *5-7 (D. Or. Dec. 14, 2006); *see also* Or. Rev. Stat. § 42.220. "A contractual provision is ambiguous if its wording can, in context, reasonably be given more than one plausible interpretation." *Williams v. RJ Reynolds Tobacco Co.*, 271 P.3d 103, 109 (Or. 2011) (citation omitted). In addition, "[t]he

court must, if possible, construe the contract so as to give effect to all of its provisions." *Id.* If the provision is unambiguous, the analysis ends. *Id.*

Where a contractual provision is ambiguous, however, the factfinder must look beyond the four corners of the contract to discern, as a matter of fact, whether there is a mutual and common intention. *See Peace River Seed Co-op., Ltd. v. Proseeds Mktg., Inc.*, 293 P.3d 1058, 1070 (Or. Ct. App. 2012) ("If the provision in question is ambiguous, the trier of fact will 'ascertain the intent of the parties and construe the contract term consistent with the intent of the parties.' … To resolve that question, the trial court may receive and consider extrinsic evidence relating to intent.") (quoting *Yogman v. Parrott,* 937 P.2d 1019, 1022 (Or. 1997)). Because Oregon follows the objective theory of contracts, direct evidence at this stage may include expressions of any such common understanding actually communicated among the parties. *See Holdner v. Holdner*, 29 P.3d 1199, 1203 (Or. Ct. App. 2001) (quoting *Real Estate Loan Fund Or. Ltd. v. Hevner*, 709 P.2d 727, 730-31 (Or. Ct. App. 1985)). Statements of a party's subjective intent that were not expressed or communicated at the time the contract was formed are not permissible evidence of intent. *See*, *e.g.*, *Fogg*, 2006 WL 3716745, at *9; *c.f. Holdner*, 29 P.3d at 1203.

In the absence of such direct evidence, the parties' course of dealing or their performance during the term of the contract may provide circumstantial, or inferential, evidence of their mutual and common understanding, if any, concerning the ambiguous provision. *See Yogman*, 937 P.2d at 1022 (the parties' "practical construction of an agreement may hint at their intention" (citing *Tarlow v. Arnston*, 505 P.2d 338, 341-42 (Or. 1973) ("How the original parties and their successors conducted themselves in relation to the agreement is instructive in our determination of what must have been intended."))); *Goodman v. Cont'l Cas. Co.*, 918 P.2d 438, 443 (Or. Ct.

App. 1996) (parties' performance is persuasive evidence of meaning). In the absence of any such direct or circumstantial evidence, or if the contract remains ambiguous after considering any such evidence, the third step is to apply any relevant maxims of construction. *See Yogman*, 937 P.2d at 1022.

When a contractual provision is ambiguous, ascertaining its meaning at steps two and three of the *Yogman* analysis is a question of fact generally not appropriate for summary judgment. *See Dial Temp. Help Serv., Inc. v. DLF Int'l Seeds, Inc.*, --- P.3d ---, 2013 WL 961906, at *1 (Or. Ct. App. Mar. 13, 2013) (the "general rule" is that the meaning of a contract may be disposed of by way of summary judgment only if its terms are unambiguous); *Madson v. W. Or. Conference Ass'n of Seventh-Day Adventists*, 149 P.3d 217, 222 (Or. Ct. App. 2006) ("Because the contract is ambiguous, ascertaining its meaning is a question of fact, and the trial court therefore erred in granting defendant's motion for summary judgment.").

## B.  The Expiration Clause (Paragraph 11.1) of the Patent Agreement

Based on the text and context of the Expiration Clause, and viewing the Patent Agreement as a whole, the Court finds that the Expiration Clause is unambiguous. The Expiration Clause establishes that there are two possible ways for the Patent Agreement to cease being in full force and effect: (1) termination; or (2) expiration. The Expiration Clause expressly acknowledges that the manner of *termination* of the Patent Agreement is set forth in Paragraphs 11.2, 11.6, and Part 12 of the Patent Agreement. The manner of *expiration* of the Patent Agreement is established within the Expiration Clause itself, which states that the Patent Agreement will remain in effect "until the last claim of the Apeldyn Patent expires or is invalidated." Pat. Agm. ¶ 11.1. It is this provision that establishes the manner of expiration that is relevant to the pending motions for summary judgment.

Apeldyn argues that the disputed provision is unambiguous and means that the Patent Agreement expires on: (1) April 23, 2012, the date that the Patent expires, along with whatever claims of the Patent were still valid as of the date of the Patent's expiration; or (2) the date that the last remaining claim of the Patent is invalidated, to the extent that all of the Patent's claims may be invalidated before the Patent itself expires. Eidos also argues that the disputed provision is unambiguous, but asserts that the Patent Agreement expires only on the date that the last Patent enforcement litigation claim is fully and finally resolved. For the reasons set forth below, the Court agrees with Apeldyn's interpretation of the disputed portion of the Expiration Clause and concludes that this provision is unambiguous as Apeldyn asserts.

**1.   The text and context of the Expiration Clause**

The heart of the dispute regarding the phrase "until the last claim of the Apeldyn Patent expires or is invalidated" is what the word "claim" means. The plain meaning of the text of the Expiration Clause supports Apeldyn's interpretation of "claim" as meaning the claim of the Patent and not a claim brought in any enforcement litigation, as argued by Eidos.

The Expiration Clause uses the term "claim of the Apeldyn Patent." Claims of a patent are a term of art in patent law. A patent must conclude with "one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). Such claims may be independent or dependent. 35 U.S.C. § 112(c). Reference to "claims of a patent" generally refers to the alleged protected part of the patent. *See, e.g.*, *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1141 n.5 (9th Cir. 2003) ("Direct infringement consists of . . . offering to sell . . . [the] invention defined by the claims of a patent, without the authority of the patent owner." (quoting *Hoechst-Roussel Pharm. v. Lehman*, 109 F.3d 756, 759 (Fed. Cir. 1997) (alterations in original) (internal

quotation marks omitted))); *Omark Indus., Inc. v. Textron, Inc.*, 688 F.2d 1242, 1246 (9th Cir. 1982) ("There is also no showing that the production version of the patent, the 91 saw chain, falls outside the claims of the patent."); *see also* 35 U.S.C. § 282(a) (referring to "each claim of a patent…").

Conversely, patent enforcement litigation claims are generally not "of" a patent, but instead "under," or "based on," or "arising under" a patent. Patent enforcement litigation claims "belong" to the patent holder, not to the patent itself. The patent claims required under patent law, on the other hand, "belong" to the patent. The disputed text of the Expiration Clause describes the claims as belonging to the Patent ("claim of the Apeldyn Patent"). In contrast, Paragraph 2.5 of the Patent Agreement, when discussing patent enforcement litigation claims, refers to such claims as "[Apeldyn']s claims under the Apeldyn Patent." Paragraph 2.5 describes enforcement litigation claims as belonging to Apeldyn, not the Patent, and as arising "under" the Patent, not "of" the Patent. This comports with how litigation claims are generally described and is in contrast to how patent claims are generally referenced. Thus, the use of the phrase "claim of the Apeldyn Patent" in the Expiration Clause, as compared to the use of "[Apeldyn']s claims under the Apeldyn Patent" in Paragraph 2.5 discussing enforcement litigation claims, supports Apeldyn's interpretation of the Expiration Clause.

"Invalidation" is also a well-known patent term. Under United States patent law:

> Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. § 282(a). Some claims of a patent might be invalidated at different times, and some claims of a patent might survive until the patent itself expires. This comports with the Expiration

Clause's use of the phrase "last claim of the Apeldyn Patent" being "invalidated" as a trigger for the expiration of the Patent Agreement. It was possible that all of the claims of the Patent could have been invalidated before the Patent itself expired, and the invalidation of the last such claim thus would have triggered the expiration of the Patent Agreement.

Litigation claims, on the other hand, are not generally referred to as being "invalidated." Litigation claims are generally referred to as being asserted, resolved, enforced, settled, upheld, lost, dismissed, or tried. The use of the word "invalidated," therefore, further supports interpreting the word "claim" in the Expiration Clause to mean the claim of a patent and not a claim asserted in enforcement litigation.

The Expiration Clause also anticipates that the claims will "expire." Although it is the patent itself that is generally referred to as "expiring," any claims of the patent that have not been invalidated would necessarily "expire" when the patent itself expires. The Expiration Clause might not be the most artfully drafted, thereby resulting in this litigation, but referencing the invalidation or expiration of the patent claims as opposed to separately referencing the invalidation of the patent claims and the expiration of the patent itself does not render the Expiration Clause ambiguous.

**2. Other clauses in the patent agreement**

Reviewing the Patent Agreement as a whole provides further support for the conclusion that the term "claim" in the Expiration Clause references patent claims and not patent enforcement litigation claims.

**a. References in the Patent Agreement to resolution of patent enforcement litigation claims**

Eidos argues that the Expiration Clause means that expiration of the Patent Agreement is not triggered until the final resolution of the last patent enforcement litigation claim (*i.e.*, when

the last litigation claim is "expired" or "invalidated"). Other sections of the Patent Agreement, however, reference resolution of enforcement litigation and such litigation resolution is not referred to as "expired" or "invalidated." For example, Paragraph 11.3, which establishes Apeldyn's option to continue working with Eidos on ongoing litigation after termination of the Patent Agreement, states that Eidos will continue to support Apeldyn until that particular litigation "terminates through settlement or judgment." No reference to "expiration" or "invalidation" is included.

Additionally, Paragraphs 2.5, 4.3, and 11.3 all refer to the final resolution of enforcement litigation as "settle or otherwise resolve," "settle, license or otherwise be resolved," and "licenses, settlements, judgments, or verdicts," respectively. The parties thus knew how to reference the resolution of a patent enforcement litigation claim in the Patent Agreement and did so fairly consistently throughout the Patent Agreement. No such phrasing was used in the Expiration Clause. The parties could easily have established in the Expiration Clause that the Patent Agreement remained in full force and effect until the last litigation or enforcement effort finally terminates through licenses, settlement, judgment, verdict, or other resolution. Such wording would have been consistent with how the resolution of enforcement litigation was referenced elsewhere in the Patent Agreement. But the parties did not use such wording in the Expiration Clause.

Interpreting the phrase "expires or is invalidated" to mean final resolution of enforcement litigation claims, as Eidos urges, is inconsistent with all of the other clauses referencing final litigation resolution and is not a sensible or reasonable interpretation. Thus, Eidos's proffered interpretation is insufficient to create an ambiguity in the meaning of the Expiration Clause. *See,*

*e.g., Peace River*, 293 P.3d at 1071 (term must be capable of more than one sensible and reasonable interpretation to be ambiguous).

### b.  References in the Patent Agreement to enforcement litigation

In addition to using different wording in the Expiration Clause from the rest of the Patent Agreement's references to the *resolution* of enforcement litigation, the Expiration Clause also uses different wording than what is used elsewhere in the Patent Agreement to reference enforcement litigation itself. Numerous clauses reference enforcement litigation, including: (1) Paragraph 1.5 "enforcement effort…based on the Apeldyn Patent;" (2) Paragraph 1.9 "legal action for enforcement and defense;" (3) Paragraph 2.3(b) "patent infringement actions;" (4) Paragraph 3.1(a) "legal actions against the Enforcement Targets;" (5) Paragraph 6.1 "filing of any law suit to enforce and/or defend the Apeldyn Patent;" (6) Paragraph 6.2 "actions for infringement of the Apeldyn Patent will be brought;" (7) Paragraph 6.3 "litigation to enforce and/or defend the Apeldyn Patent" and "bring a patent infringement action to enforce the Apeldyn Patent;" and (8) Paragraph 6.4 "bringing suit to enforce and to defend the Apeldyn Patent." The parties refer to enforcement actions in the Patent Agreement in terms of "litigation" or "suit" or "infringement action" and usually include "enforcement" or "defense" of the Patent. The parties do not use the word "claim" to reference patent enforcement litigation. Thus, interpreting the word "claim" in the Expiration Clause to mean "a claim asserted in enforcement litigation," as Eidos proposes, is inconsistent with the way enforcement actions are referenced throughout the Patent Agreement.

Eidos points out the Paragraph 12.1 uses the word "claim" to mean a litigation claim, but that section establishes arbitration for "any and all disputes, controversies, differences, or claims which may arise between the parties" and does not refer to patent enforcement litigation. It is

generic, boilerplate language preserving as broadly as possible the types of disputes between the parties that are governed by the arbitration clause. The numerous specific clauses in the Patent Agreement referencing patent enforcement litigation without using "claim" provide clearer and more persuasive evidence of the meaning of "claim" than does the boilerplate arbitration clause.

### 3.    The Expiration Clause is unambiguous as Apeldyn Asserts and is reasonable

Based on the plain meaning of the Expiration Clause and considering the text and context of the Patent Agreement, the Expiration Clause is unambiguous because there is only one "sensible and reasonable" interpretation of the word "claim" as used in that clause:  a claim "of the patent." *See Peace River*, 293 P.3d at 1071.

Eidos, however, urges the Court to adopt Eidos's interpretation that "claim" means a litigation claim, adding the argument that the adoption of Apeldyn's interpretation would create a commercially unreasonable, or even "absurd," result in that Eidos would have invested millions of dollars only to have all of its rights expire less than five years from the contract date. This argument is unavailing for several reasons. First, because the interpretation of the Expiration Clause is resolved based on its text and context, the analysis ends, and the Court does not consider extrinsic evidence of intent or maxims of construction. *Williams*, 271 P.3d at 109 ("If the meaning of the provision is clear from the text and context, then the analysis ends.") (citation omitted). Second, under Oregon law, "the law does not protect parties who enter into unwise agreements that are otherwise enforceable." *Miller v. C.C. Meisel Co.*, 51 P.3d 650, 656 (Or. Ct. App. 2002). *But see XCO Int'l Inc. v. Pac. Scientific Co.*, 369 F.3d 998, 1005 (7th Cir. 2004) ("Contract interpretations that produce commercially unreasonable results are disfavored, not as a matter of policy but simply because they are implausible to impute to the parties.") (interpreting contract under Illinois law). Third, as discussed below, the Court finds the

Preservation Clause to be ambiguous, and its ambiguity is centered on Eidos's potential accrued rights or claims for compensation or reimbursement. Although the Court cannot state as a matter of law at this time that Eidos has such accrued rights or claims, it appears that there may be such accrued rights or claims that would result in some reasonable compensation or reimbursement potentially being owed to Eidos under the Patent Agreement if there are future judgments or settlements, attributable, at least in part, to Eidos's contributions to the patent enforcement effort. Thus, the Court's interpretation of the Patent Agreement, considering both the Expiration Clause and the Preservation Clause, does not necessarily create a commercially "absurd" result as argued by Eidos.

The word "claim" as used in the Expiration Clause means the claim of a patent, and interpreting it to mean an enforcement litigation claim is neither sensible nor reasonable. Thus, the Patent Agreement expired on April 23, 2012, the day that, as the parties agree, the Patent (and all of its associated claims) expired.

## C.  The Preservation Clause (Paragraph 11.5) of the Patent Agreement

Although the Court interprets the Expiration Clause unambiguously to mean that the Patent Agreement expired on April 23, 2012, that does not imply that none of the Patent Agreement's terms remain in effect. To the contrary, the Preservation Clause provides that certain specific clauses shall remain in effect even after the expiration of the Patent Agreement and, additionally, that "a claim or right that has accrued prior to . . . expiration" is not extinguished by expiration. Pat. Agm. ¶ 11.5. As discussed below, this Preservation Clause is ambiguous and its final interpretation is not appropriate for summary judgment.

### 1.  The text and context of the Preservation Clause

The disputed provision of the Preservation Clause is the final sentence, which states that: "Termination or expiration of this Agreement will not extinguish a claim or right that has

accrued prior to termination or expiration." Pat. Agm. ¶ 11.5. The key to resolving this dispute is determining what rights or claims accrue, when they accrue, and how they accrue. The parties offered little briefing on this issue. At oral argument, Apeldyn argued that only a license, judgment, settlement, or verdict completed before expiration of the Patent Agreement but with outstanding obligations (such as payment obligations) would qualify as an accrued claim or right under the Preservation Clause. Eidos argued that essentially everything relating to a pending and unresolved patent enforcement lawsuit, including Eidos's right to sit on the Steering Committee, choose litigation counsel, participate in settlement negotiations, and share in settlement or judgment proceeds, is an "accrued" right, provided that Eidos contributed in some way to that litigation under the Patent Agreement before it expired.

The text of the Preservation Clause offers little guidance as to when a claim or right has accrued and what types of claims or rights might accrue under the Patent Agreement. The parties offered little evidence regarding the meaning of "a claim or right that has accrued prior to . . . expiration." The Court finds that, based on the text alone, the Preservation clause is ambiguous.

Considering the context of the Preservation Clause, immediately before the "accrued rights" sentence, the Preservation Clause specifically preserves certain enumerated clauses of the Patent Agreement as surviving expiration. These clauses address confidentiality, choice of law, arbitration, notice provisions, and some miscellaneous boilerplate contract provisions. After specifically enumerating these clauses as remaining in effect after termination or expiration of the Patent Agreement, the parties included an additional sentence expressly preserving all "accrued" rights or claims. Thus, the context of the Preservation Clause demonstrates that there are rights or claims that might accrue under the Patent Agreement and be preserved after

expiration in addition to those set forth in the specifically enumerated and preserved clauses. The Patent Agreement, however, does not define "accrued" rights or claims.

The context of the Preservation Clause fails to illuminate precisely what those rights might be or how and when they might accrue. It does not appear from the text and context of the Preservation Clause that every right under the Patent Agreement necessarily would qualify as an accrued right. If every right was an accrued right, there would be no need for the Preservation Clause to enumerate and preserve specific clauses. *See Williams*, 271 P.3d at 109 (in interpreting a contract, the court must, if possible, give effect to all of its provisions). It also appears that the parties gave some consideration to which clauses or rights they considered essential to remain in effect after termination or expiration of the Patent Agreement.

### 2.  Assistance provided by other clauses in the Patent Agreement

There are some clauses in the Patent Agreement that potentially provide rights or claims that might be considered to have accrued and thus not be extinguished by expiration of the Patent Agreement. Unfortunately, those clauses themselves are ambiguous and do not, by themselves, resolve the ambiguity of the Preservation Clause.

For example, Paragraph 1.5 defines "Gross Revenues" as "all sums received or recovered by APELDYN, following the Effective Date [of the Patent Agreement], as a result of or in connection with any license or enforcement effort pursuant to this Agreement based on the Apeldyn Patent. . . ." There is no time restriction stated, other than that the commencement period for Gross Revenues is after the effective date of the Patent Agreement. No termination period is stated, and the parties do not specify whether the sums received from a "license or enforcement effort pursuant to this Agreement" have to be received before the expiration of the Patent Agreement in order to be considered Gross Revenues or whether the "license or

enforcement effort" has to be completed before the expiration of the Patent Agreement. Because the Gross Revenues clause is silent as to the effect of expiration or termination, and the Patent Agreement clearly establishes that expiration and termination are contemplated outcomes, the Gross Revenues clause is ambiguous as to its relationship to any accrued rights or claims that may survive expiration.

Similarly, Paragraph 4.1 of the Patent Agreement establishes that Apeldyn has an "obligation to promptly compensate EIDOS for its services and to reimburse EIDOS for its expenses as set forth in, *inter alia*, Parts 3.3, 6.4, and 6.5 of this Agreement." Again, there is no time limitation expressed on this obligation, and there is no specific discussion of how expiration or termination of the Patent Agreement might affect this obligation of Apeldyn. This paragraph may create an accrued right or claim of Eidos for compensation or reimbursement, but this clause is itself ambiguous—for example, how would any "compensation" or "reimbursement" be calculated? Also, what happens if Apeldyn, after expiration of the Patent Agreement, is able to move forward with a previously-filed patent enforcement action, retains and pays for new counsel, and engages in significant new efforts resulting in a successful trial or settlement, all without Eidos's continuing participation? How would Eidos be compensated, if at all? Would compensation be based on the Distribution of Revenue formula established in Section 4 of the Patent Agreement? Or would compensation be determined by a percentage of that distribution, based on each party's relative contribution to the overall enforcement effort? These are all questions that are not resolved by the text and context of the Patent Agreement, rendering Paragraph 4.1 ambiguous and, by extension, the Preservation Clause.

It is unambiguous, however, that Apeldyn is under no obligation to compensate or reimburse Eidos other than from Gross Revenues received—so if Apeldyn is unsuccessful in its

pending and continuing enforcement actions, it will not owe any further reimbursement or compensation to Eidos under the Patent Agreement. Pat. Agm. ¶ 4.6.

The Court finds that, after viewing the Patent Agreement as a whole, the Preservation Clause is ambiguous as to what additional rights or claims may have accrued before expiration and thus would survive expiration.

### 3. *Yogman* additional steps

Having found the meaning of the Preservation Clause to be ambiguous, it is generally not appropriate to resolve a contractual ambiguity at summary judgment. *See Dial Temp. Help Serv.*, 2013 WL 961906, at *1; *Madson*, 149 P.3d at 222. There is an exception to this general rule where there is no relevant extrinsic evidence to resolve the ambiguity. *See Dial Temp. Help Serv.*, 2013 WL 961906, at *2; *Madson*, 149 P.3d at 222 n.3. "In such circumstances, the court can, on summary judgment, determine the contract's meaning by applying appropriate maxims of construction." *Madson*, 149 P.3d at 222 n.3 (citing *Yogman*, 937 P.2d at 1022). This exception does not apply here because the parties have not indicated that there is no relevant and admissible extrinsic evidence to be offered. Although the parties provided limited admissible extrinsic evidence of intent in their summary judgment submissions on this issue,[1] they requested at oral argument the opportunity to provide additional extrinsic evidence, if such may be helpful to the Court. Thus, there is no agreed-upon lack of extrinsic evidence on which to skip *Yogman* step two and have the Court determine at this time the contract's meaning based on maxims of construction. *See id.* (declining to apply the exception because "the parties each proffered some extrinsic evidence relating to the disputed issue and, unlike in *Yogman*, they did not agree that there was no other extrinsic evidence that was relevant to the meaning of the contract").

---

[1] The parties focused almost exclusively on the Expiration Clause in their summary judgment submissions.

The Court finds that resolution of the meaning of the Preservation Clause at summary judgment is inappropriate. Accordingly, the analyses under steps two and three of *Yogman* shall be conducted by the trier-of-fact at trial.[2]

**D.  Apeldyn's Motion to Strike**

Apeldyn moved to strike certain materials filed by Eidos in connection with Eidos's cross motion for summary judgment and response in opposition to Apeldyn's motion for summary judgment. At oral argument, the Court noted that certain evidence submitted by Eidos was evidence of unexpressed, subjective intent and therefore inadmissible under Oregon's law of contract interpretation. *See* discussion, *supra*. The Court also noted that some evidence submitted by Eidos was inadmissible as not being based on personal knowledge. The Court stated that it would not consider any of the inadmissible evidence. Accordingly, the Court will not consider any inadmissible evidence submitted by Eidos and therefore denies Apeldyn's Motion to Strike as moot.

**CONCLUSION**

Apeldyn's motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART. Dkt. 62. Paragraph 11.1 of the Patent Agreement is unambiguous, and the Court finds both that the Patent Agreement expired on April 23, 2012, and that under the express terms of the Patent Agreement certain clauses remain in full force and effect even after expiration. Paragraph 11.5 of the Patent Agreement, however, is ambiguous. The Court cannot determine, as a matter of law, that the expiration of the Patent Agreement extinguished all claims of Eidos against Apeldyn based on litigation that was pending before expiration. Eidos's cross motion for

---

[2] Based on the nature of the claims, the Court will be the trier-of-fact with respect to interpreting the meaning of the Patent Agreement.

partial summary judgment is DENIED. Dkt. 86. Apeldyn's Motion to Strike is DENIED AS

MOOT. Dkt. 99.

     IT IS SO ORDERED.

    Dated this 8th day of April, 2013.

                            /s/ Michael H. Simon
                            Michael H. Simon
                            United States District Judge